By the Court—Bosworth, Ch. J.
When this cause was before .the general term on an appeal from the judgment entered on the report of a Referee, the Court held *252 that the claims of the plaintiff must be adjusted either upon the principle, first, that the plaintiff has ratified the sale to the Hew York Ice Company, or second, that he entirely repudiates that sale. (6 Bosw., 520, 531.)
Waiving, for the present, the question, whether the plaintiff must be deemed to have made an election between these principles, by which he is concluded in this action, what are his rights, when tested solely by contracts to which he is a party ?
The agreement of the 21st of August, 1855, between Cheeseman, Braisted & Sturges, by the covenant contained in it “that all stock or other securities than cash, provided for in said contracts, as part of the consideration for the performance thereof, shall remain undivided until a final settlement,” imports that, by “ said contracts,” Cheese-man, and Cheeseman and Christie, were to be paid by the People’s Ice Company, partly in money and partly in stocks. That agreement also imports, that the money, which it was contemplated the People’s Ice Company would pay in performance of the said contracts entered into with them, would be applied to refund “ all moneys advanced ” by either of the three, in the performance of that agreement.
The declaration of trust, (as it is called) viz.: the covenant by Sturges of the 25th of September, 1855, shows that it was not intended, by conveying the property to which the agreement of the 21st of August, 1855, relates, to modify the rights or interests of either of these three parties in such property, or their relations to it, as between themselves; Sturges covenanted therein, to hold said real estate and premises, in trust for the three jointly; not to convey or encumber it except for the purpose of said contracts, and then only with the consent and approbation of Cheeseman & Braisted.
Looking at all the provisions of the agreement of the 21st of August, 1855, in connection with the covenant of Braisted & Sturges to pay, furnish and supply “ all the necessary money and means to fully carry on and perform *253 said contracts,” and in connection also with the declaration of trust of September 25, 1855, I think it was the understanding of these three parties, that when the contracts with the People’s Ice Company were performed, and the latter had made the payments which they had stipulated to make, the money received from them would be applied by Sturges to reimburse moneys advanced, and that either of them would then have a right to call for a final settlement. Sturges was precluded by his covenant from disposing of anything, other than money, which he might receive, until a final settlement was had between them. In this view, if the contracts had been performed, and the People’s Ice Company had paid the stipulated price, and if the money received by Sturges was insufficient to pay his advances, then any balance, payable either by Braisted or Cheeseman, it would be his right to demand, on transferring to him his aliquot part of “ all stocks or other securities than cash” which should then “remain undivided.”
Whether, in the event that Cheeseman refused or was unable to pay his aliquot part of the unsatisfied balance of the advancements, Sturges could recover it by action at law, or would be compelled to bring an action for an account, and take a judgment for a sale of the undivided stock and other securities owned in common, and payment out of the proceeds, and if still a deficiency, a judgment against Cheeseman for his proportion of it, may be quite material, in one aspect of the case, in determining whether the judgment appealed from-is erroneous.
If the latter was his only remedy, then the judgment is erroneous, even on the principle that the plaintiff ratified the sale to the Hew York Ice Company.
If the plaintiff has ratified that sale, then his interests and rights, in and to the property mentioned in the declaration of trust of the 25th of September, 1855, have become vested in and attach to 5,600 shares of the stock of that company, amounting to $140,000. The property *254 held by Sturges in trust, was transferred for stock of the company, amounting to $140,000.
The Court, at Special Term, has found that Oheeseman did not assent to a transfer, except upon the terms that the stock of the Hew York Ice Company should be $430,000, and that $215,000 of such stock, or half of the whole stock, should be obtained for the joint property. The capital of that company was fixed at $350,000, and only $140,-000 of the stock was paid for this property, being $35,000 less than half of the whole stock. And it is not found, as a fact, that Oheeseman ratified this sale. On the contrary, as I construe the statement of facts found, the Court finds that, as a matter of fact, Oheeseman did not ratify the sale that was made.
The Judge held, as matter of law, (first,) that this action, by reason of the claim made in it, the form of the complaint, and the character of orders obtained in it at the plaintiff's instance, and other proceedings had therein, precludes the plaintiff from obtaining any relief in the shape of a judgment for money, in this suit.
And, (third,) that although the capital stock of the Hew York Ice Company has been changed pending this suit, by an increase of the capital from $350,000 to $500,000, so that the plaintiff cannot in any event, or upon any terms, obtain any part of the stock, precisely as it existed when this suit was commenced, yet as the plaintiff has proceeded to trial with full knowledge of the change in such capital, he is to be deemed to have elected to look to and seek his indemnity, out of the new and substituted stock, and “is entitled to resort to no other property or fund, or personal liability.”
The conveyance of the property to the Hew York Ice Company, by Sturges, and what Consideration he received for it, were known to the plaintiff before this suit was commenced. The facts, are stated in the complaint, and the relief prayed is a judgment against Sturges that he account concerning the moneys paid to him prior to such conveyance, and the stock received by him as the con *255 sideration of such conveyance, and that the defendants pay over and transfer to the plaintiff his just and equitable share of the said moneys and stock.
The plaintiff prosecuted the action, in this aspect and on this basis, to judgment. And he obtained a judgment, in substance and effect, that Sturges, after retaining enough of the stock, at its par value, to satisfy his advances, should transfer to the plaintiff his proportion of the residue of the stock, viz.: 754 shares, and pay the dividends that had been received thereon. (6 Bosw., 526.)
With this judgment the plaintiff was satisfied. The defendant appealed from it to the General Term: the judgment was reversed, and the Oourt, in the opinion delivered, states, as its conclusions, that the plaintiff had elected his relief, and was concluded by his election, and that he could not have more than his proportion of the stock, on paying his due proportion of the advances. (6 Bosw., 532, 533.)
In Orme v. Broughton, (10 Bing., 533,) Tindal, C. J., says, that “ after bringing an action in which the grievance alleged is the loss sustained by breach of the contract, I think it would be impossible to bring a second action, or to resort to any other means to enforce the contract, inasmuch as the first action is to be deemed an election as to the remedy sought.”
In the case before us, the plaintiff, by his complaint, sought his proportion of the stock for which the property had been conveyed to the Hew York Ice Company, and pursued the claim for relief of that character, to judgment.
In Gardner v. Ogden et al., (22 N. Y. R., 327,) it was held that the clerk of a broker, employed to sell land, having access to the correspondence between his principal and the vendor, stands in such a relation of confidence to the latter, that, if he becomes the purchaser, he is chargeable as trustee for the vendor, and must reconvey or account for the value of the land.
The vendor having brought a suit against both the broker and his clerk, making a claim against the broker for having fraudulently sold the land, and against the clerk *256 for a reconveyance or accounting, the Court said, (Id., p. 340,) “ In the present case, the plaintiff has elected to regard Smith (the purchaser) as his trustee, and his complaint, as to him, and the decree of the Special Term, proceeds on this basis. The plaintiff, therefore, elects to affirm the sale made to Smith. He cannot, uno flatu, affirm it as to him, and disaffirm it, as to Ogden.” * * “ The affirmance of the sale by the plaintiff, is a complete answer to the claim for damages against the firm for fraud in making the sale." (Id., 341.)
In Sanger v. Wood, (3 Johns. Ch. R., 416,) Chancellor Kent says: (p. 422,) “ Any decisive act of the party, with knowledge of his rights and of the fact, determines his election in the case of conflicting and inconsistent remedies. . * * * And I consider the going to trial in the action at law ” (the fraud having been discovered a few days before the trial) “ and especially the entry of judgment afterwards upon the verdict, as a decided confirmation of the settlement in April, 1816.”
Evans v. Inglehart, (6 Gill. & J., 188,) affirms the same doctrine.
Ho more decided conduct in regard to electing between remedies open to a plaintiff, can be had, than exists in this case. With a full knowledge of the alleged wrong, and in a complaint stating it, judgment is prayed for the plaintiff’s share of the stock into which the trust property had been converted. An injunction was sought and obtained restraining the transfer of it. And a portion of it has been' retained within the control of the Court, pending this litigation, to satisfy any claim the plaintiff might establish.
It is settled law, that a party prosecuting two suits at the same time, upon the same cause of action, seeking in the one relief inconsistent with that sought in the other, will be compelled- to elect which remedy he will pursue. And in the present case, the plaintiff has made his election and is concluded by it, for all the purposes of this suit, and of any relief that can be granted in it.
*257 He must be treated, therefore, precisely as if the conveyance to the Hew York Ice Company had been made with his assent, and upon terms authorized by him.
In this aspect of his rights and liabilities, the property in which he and Sturges were interested had been converted into stock, and no money could be realized from it to pay the advances made by Sturges, except by a sale of the stock.
The agreement of the 21st of August, 1855, between Oheeseman, Braisted & Sturges, provides “ that all stocks or other securities than cash, provided for in said contracts as part of the consideration for the performance thereof, shall remain undivided between them until a final settlement, and that neither of said parties shall sell or dispose of his interest in said contracts, or any of the proceeds other than money, without the consent in writing of the others.”
I think it was the intent and understanding of the parties, that after the contracts had been executed and payment had been received, there should be a final settlement between the parties to ascertain how much was due to either for advances made, with a view to a division of what might remain after satisfying such advances.
The said agreement of the 21st of August, 1855, also provides, “ that upon the performance and completion of the same (the said contracts), after refunding all moneys expended in the performance thereof, to the parties advancing and furnishing and providing it, and all costs, charges and expenses paid or incurred in the performance of said contracts, to divide and apportion the balance between them equally, share and share alike.”
This agreement indicates very clearly that Oheeseman was not to make any pecuniary advances, pending the executing of the contracts, and that the advances to be made by the-other parties were to be satisfied out of the money and stocks and other securities to be received for performing the contracts, and only the balance then remaining was to be divided between the parties.
*258 The plaintiff insists that injustice has been done to him by the decision that he should pay his just proportion of the advances by a day named, and that in default thereof his third of the stock should be sold to satisfy that sum, or so much of it as may be necessary for that purpose, and that in case of a deficiency he should pay such deficiency. He further insists that enough of the whole stock should be sold to satisfy the entire advances, and that the residue, if any, should be divided, and in case it did not sell for enough to pay the entire advances, the plaintiff should be charged with only his proportion of the deficiency.
I am not satisfied that this claim is well founded.
The Judge found a balance, due to Sturges for advances, of,................................... $79,058 75
If the stock would sell for 50 cents on the dollar, it would produce,................ 70,000 00
And leave a deficiency of,................ $9,058 75
One third of which is,..................... 3,019 58
The latter sum would be-amount of the plaintiff’s loss, and double that the amount of Sturges’ loss, as he has succeeded to Braisted’s rights and liabilities.
Oheeseman’s proportion of the $79,058.75 is $26,352 .92 His third of the stock, viz. $46,666.66, at 50 ' per cent would produce,................. 23,333 33
And his loss would be,.................... $3,019 59
' Hence it follows,.that whether the whole stock be ordered to be sold to pay the entire advances, or only one-third of it to pay one-third of the advances, the result is precisely the same to the plaintiff, provided it may reasonably be expected that, it can be sold at the same rate per cent, in- each case.
And I know of no principle on which- it is just to assume that it will- sell at a. higher rate per cent on a sale of stock amounting at its par value to $140,000, than on a sale amounting, at its part value to only $46,666fin,.
*259 I am, therefore, of the opinion, that there is nothing inequitable in that part of the judgment now under consideration ; and if there is not, there can be no reason why Sturges should not be allowed to retain his share of the stock, on being charged with his part of the advances. The plaintiff cannot, in judgment of law, be benefited by compelling him to submit to a sale of it to work out the equities of the parties, and Sturges should, therefore, be left to his chances of realizing more by holding his stock, than from a sale of it in presentí. If permitted to retain Ms proportion, he also incurs the risk of a greater loss, but I am inclined to think that the plaintiff has no rights, which permit him to require a sale of the whole, in presentí.
If these views are correct, then the only qliestion left, regards the effect of the increase of the capital of the H. Y. Ice Company, pendente lite.
The increase of capital from $350,000 to $500,000, was determined upon by the corporation, on the 27th of January, 1857. This action was commenced on the 14th of that month; the plaintiff knew that the capital had been increased, as early as January 8,1858. An order in this action was made as early as January 7,1858, modifying the injunction orders previously granted, on a deposit of the stock of the H. Y. Ice Company with the Clerk of the Court, amounting to $25,000; and on the 8th, certificates of 1,000 shares were so deposited, and these certificates were upon the increased capital of 500,000.
The trial, resulting in the present judgment, was had in March, 1861. If the plaintiff proposed to make any claim, based on the individual action of the defendant Sturges in effecting such increase of capital, he should have moved to adapt his pleadings to it, and have caused them to be so amended as to present the questions he designed to raise. Instead' of doing that, he goes to trial, knowing of the increase of the capital, and must be deemed to have continued to pursue the stock in the company, as it existed after such increase of its capital. (Sanger v. Wood, supra(.
*260 This branch of the case may be viewed in another aspect. Supposing the property to have been conveyed to the M.' Y. Ice Company, with the knowledge and assent of. the plaintiff for $140,000 of its stock, (the capital being then $350,000,) and this suit to have been brought to recover the plaintiff’s proportion of such stock; the pendency of such a suit would not affect the capacity or right of the company to increase its capital, pendente lite; nor would the fact of such, an increase affect the rights and liabilities of the parties to the suit, inter se, in respect to the stock forming the. subject matter of such litigation. The par value of the shares continues unaltered, and the nominal increase of the capital is supposed and purports to be represented by a corresponding increase of actual capital.
And the plaintiff, in the case supposed,, would receive, by the judgment of the Court, his portion of $140,000 of stock as it existed, at the time judgment was pronounced. He would obtain the same number of shares, and of the same par value, and in judgment of law of the same actual value, as if the capital had not been increased. .
The plaintiff, having elected to affirm the sale made to the Mew York Ice Company, occupies the same position as if he had been a party to such sale and had procured it. ' The result of these views is, that he cannot make the fact, that the Mew York Ice Company has increased its capital during this litigation, the basis of a claim to charge the : defendant, in damages, for the cash value of the $140,000 of stocks, as it existed before or at the time of the increase of the capital.
It is not the case of a fraudulent or wrongful conversion, ■by a defendant, pendente lite, of trust property, which a suit is instituted and seeks to reach, and to. which, at the commencement of the. suit, the plaintiff was entitled.
The conversion, or change in the character of the stock, ■is one of form rather than of substance, and that change has been made by the corporation, and not by the defendants.
This appeal has been argued by the co.unsel of the *261 appellant on the basis, and on a preliminary statement made by Mm to the Court, that he should assume the facts to be correctly found; and insist that on the facts found the judgment was erroneous. Considering only these questions, and no others were discussed, I tMnk there is no error in the judgment, and that it should be affirmed.
The other Justices concurring in the opinion, judgment o'f affirmance was ordered.